# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

BP GROUP, INC.,

                            Plaintiff,

v.

CAPITAL WINGS AIRLINES, INC., and
DAVID N. KLOEBER, JR.,

                            Defendants.

and

DAVID N. KLOEBER, JR.,

                            Cross-Claimant,

v.

GERALD L. TROOIEN,

                            Cross-Defendant.

Civil No. 09-2040 (JRT/JSM)

**MEMORANDUM OPINION
AND ORDER**

Aaron Mills Scott and Gary M. Hansen, **OPPENHEIMER WOLFF & DONNELLY LLP**, 45 South Seventh Street, Suite 3300, Minneapolis, MN 55402, for plaintiff.

Michael H. Streater and Christianne A. R. Whiting, **BRIGGS & MORGAN, PA**, 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402, for defendant/cross-claimant David N. Kloeber, Jr.

George G. Eck, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402, for cross-defendant Gerald L. Trooien.

BP Group, Inc. ("BP Group") filed suit against David N. Kloeber, Jr. as the guarantor of certain contractual obligations it argued had been breached. The contract at issue is an Aircraft Management Agreement executed by BP Group and Capitol Wings Airlines, Inc. ("CWA"). Kloeber signed the agreement on behalf of CWA, and also signed a personal guaranty to secure CWA's performance. By Order of March 14, 2011 ("the Summary Judgment Order"), the Court denied Kloeber's Motion for Summary Judgment, granted BP Group's Motion for Summary Judgment as to its claims against Kloeber, and denied as moot BP Group's Motion to Strike. *BP Group., Inc. v. Capital Wings Airlines, Inc.*, No. 09-2040, 2011 WL 884135, at *11 (D. Minn. Mar. 14, 2011). The Court directed that judgment be entered in favor of BP Group against Kloeber in the amount of $1,518,221.67. *Id.* at *12.

The Aircraft Management Agreement provides that any payments unpaid under the agreement shall bear interest at a rate of 12% per annum, and that in the event of a dispute, the prevailing party is entitled to reasonable attorney fees and costs. *Id.* at *11. Accordingly, pursuant to the Court's direction in the Summary Judgment Order, BP Group has filed a Motion to Add Attorney Fees and Costs to Judgment Without Hearing as well as a Motion to Add Interest to Judgment Without Hearing. (Docket Nos. 87, 90.) The Court grants the motions in part, reducing the amounts for the reasons stated below.

## ANALYSIS

## I.      ATTORNEY FEES AND COSTS

The Aircraft Management Agreement provides that "[i]n the event of a dispute under this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, and costs."  (Aff. of Aaron Mills Scott, Ex. A at 8, ¶ 22, Mar. 18, 2011, Docket No. 93.) BP Group requests attorney fees in the amount of $236,109.00 and costs and legal expenses in the amount of $34,919.29, for a total request of $271,028.29.

The Aircraft Management Agreement is governed by Florida law.  (*Id.* at 8, ¶ 23.) While the issue of whether BP Group is entitled to recover attorney fees and costs pursuant to the Aircraft Management Agreement is a substantive matter controlled by Florida law, "the method of quantifying a reasonable fee is a procedural issue governed by federal law in a diversity suit."   *Oldenburg Grp. Inc. v. Frontier-Kemper Constructors, Inc.*, 597 F. Supp. 2d 842, 847 (E.D. Wis. 2009) (emphasis omitted) (citing *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1076 (7th Cir. 2004)); *see also Warranty Corp., Inc. v. Hans*, No. CIV. A. 98-0889-MJ-S, 2000 WL 284261, at *6 (S.D. Ala. Mar. 9, 2000) ("The plaintiffs in this diversity action seek attorneys' fees pursuant to contract.  Accordingly, entitlement to such fees, and the amount thereof, is a question of state law, while the procedures for proving up such fees is governed by federal law."). Kloeber does not challenge BP Group's entitlement to reasonable attorney fees and costs

in the context of this motion; rather, he objects to the reasonableness of BP Group's claim for $271,028.29 in fees and costs.[1]

In determining a reasonable award of attorney fees, the Court begins with the "lodestar" amount, obtained by calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (interpreting 42 U.S.C. § 1988); *see also Fair Isaac Corp. v. Experian Info. Solutions Inc.*, 711 F. Supp. 2d 991, 1009 (D. Minn. 2010) (using the *Hensley* lodestar method to assess a fee request submitted pursuant to contractual language). The party seeking an award of attorney fees must submit adequate evidence to demonstrate the hours worked and rates claimed. *Hensley*, 461 U.S. at 437. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433. In addition, the Court must exclude claimed hours that were not "reasonably expended[,]" such as hours that are "excessive, redundant, or otherwise unnecessary . . . ." *Id.* at 434. In determining a reasonable fee, the Court may also account for numerous other factors, including "the [party's] overall success; the necessity and usefulness of the [party's] activity in the particular matter for which fees are requested; and the efficiency with which the [party's] attorneys conducted that activity." *Jenkins v. Missouri*, 127 F.3d 709, 718 (8th Cir. 1997).

---

[1] Even under Florida law, the Court would apply the federal approach to calculating reasonable attorney fees and costs. *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1146 (Fla. 1985).

BP Group submitted fees for three attorneys with a range of rates increasing from 2009 to 2011: partner Gary Hansen (hourly billing rate of $535-$565), associate Aaron Scott (hourly billing rate of $290-$330), and associate Tara Iversen (hourly billing rate of $250-$270).  The Court may not "automatically accept the lawyer's rate as reasonable; [instead, the Court] look[s] also to the ordinary fee for similar work in the community." *Shakopee Mdewakanton Sioux Cmty. v. City of Prior Lake, Minn.*, 771 F.2d 1153, 1160 (8th Cir. 1985) (internal quotation marks omitted).  While BP Group did not submit affidavits or other evidence indicating the prevailing market rate for similar legal services in the Minneapolis area, the Court may rely on its own knowledge of prevailing market rates in determining a reasonable hourly rate.  *See Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005).  Nonetheless, without any information about the level of experience or expertise of the three attorneys whose work forms the basis for BP Group's attorney fee request, other than their typical hourly billable rates and designation as either partner or associate, it is difficult for the Court to determine whether the submitted rates are reasonable.[2]

Moreover, Kloeber has cited examples of charges for legal fees that the Court agrees are excessive.  Specifically, Kloeber identified over eighty-five billing entries in which BP Group's attorneys billed for conferencing with each other.  On a complex case

---

[2] The record includes evidence of **Kloeber's** counsel's billable rates, and BP Group argues that its rates are reasonable because its attorneys billed at a combined rate lower than Kloeber's attorneys.  BP Group has offered no precedent in support of the proposition that a combined hourly lower than the combined hourly rate of opposing counsel demonstrates the reasonableness of each attorney's charged rate.

such as this one, it is reasonable to expect some amount of billing for discussions between attorneys. *See, e.g.*, *Baughman v. U.S. Liab. Ins. Co.*, 723 F. Supp. 2d 741, 750-51 (D.N.J. 2010) ("The Court finds it entirely appropriate, and probably necessary, that the partner assigned to this case met periodically with the associate who performed most of the work. Moreover, paying both attorneys for their reasonable expenditure of time at these meetings is not 'double-billing' – both [the partner's] and [the associate's] time is to be valued." (footnote omitted)). However, the Court concludes that the amount of full billing for multiple attorneys' participation in dozens of interoffice conferences warrants a reduction in the requested fee in this case. *See Signature Combs, Inc. v. United States*, No. Civ. 98-2777, 2003 WL 22071165, at *1-2 (W.D. Tenn. June 18, 2003) (finding "[i]nteroffice conferences . . . excessive" and concluding that when multiple attorneys have billed for overlapping calls or conferences, it is appropriate to permit full remuneration for the attorney billing at the highest rate and one half of the claimed remuneration for one other attorney billing at an equal or next lower rate).

Additionally, many of the billing entries submitted by BP Group's counsel relate to claims brought against and settlement discussions with Kloeber's former co-defendant and fellow guarantor Gerald Trooien. BP Group also seeks reimbursement for legal fees related to filing a proof of claim in Trooien's subsequent bankruptcy proceeding, and reviewing pleadings and observing proceedings in a state court lawsuit between Trooien and Kloeber, to which BP Group is not a named party. The Aircraft Management Agreement provides that "[i]n the event of a dispute under this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, and costs." While this language is

arguably broad enough to cover expenses related to the claims in this lawsuit against Kloeber's co-defendants, the Court concludes that expenses related to Trooien's bankruptcy proceeding and the separate lawsuit between Trooien and Kloeber are too attenuated from the dispute in which BP Group prevailed to sustain the imposition of attorney fees related to those separate proceedings.

The Court does not find merit in all of Kloeber's challenges to the reasonableness of BP Group's attorney fee request.  For example, contrary to Kloeber's assertion, BP Group's counsel reasonably expended 31.3 hours in preparing for and attending the summary judgment hearing.  Kloeber objects that a partner billed for reviewing the transcripts of depositions taken by an associate, but in the Court's view it is reasonable and presumably necessary for a partner working on a case to review the deposition transcripts; the firm achieved efficiency in avoiding billing for both attorneys to attend the depositions.  Similarly, the Court is untroubled by what Kloeber characterizes as duplicative billing but what in fact reflects the reasonableness of more than one attorney working together on a case.  Kloeber challenges, for example, billing for a partner to edit a Rule 26 disclosure statement and for an associate's time spent revising it.  Moreover, Kloeber has cited no legal authority for the proposition that a disparity between the hours expended by BP Group's counsel on this case (710 hours) as compared to the hours expended by Kloeber's counsel (293.35 hours) reflects the unreasonableness of the former.  BP Group's counsel obtained a decisively favorable judgment in a complex contract dispute.  According to BP Group, Kloeber's attorney fees are deceptively low because they reflect efficiencies its law firm was able to achieve in fact investigation

arising in part from two facts: (a) other attorneys represented Kloeber's interests prior to BP Group's filing suit, and (b) Kloeber's counsel achieved efficiencies in fact investigation by representing Kloeber in multiple other related suits.

Nonetheless, the Court concludes that some reduction in BP Group's fee request is necessary given the absence of evidence supporting the claimed rates as well as some excessive billing, as described above.  In these circumstances, and after a careful review of the parties' submissions, the Court finds it appropriate to reduce BP Group's request for attorney fees by 15%, or $35,416.35.  Instead of the $236,109.00 in attorney fees requested by BP Group, the Court concludes that $200,692.65 represents a reasonable amount of attorney fees in this matter.

BP Group also requests $34,919.29 in costs and legal expenses.  Kloeber objects to $24,487.20 in computerized research charges, arguing that such costs are not reimbursable under Eighth Circuit precedent.  *See Standley v. Chilhowee R–IV Sch. Dist.*, 5 F.3d 319, 325 n.7 (8th Cir. 1993) ("Counsels' time spent doing the computer-based legal research is compensable as part of counsels' billable hours.  It is the actual cost to the attorneys for their on-line computer time that . . . is a component of attorney fees and cannot be recovered in addition to the fee award."); *Leftwich v. Harris–Stowe State Coll.*, 702 F.2d 686, 695 (8th Cir. 1983) ("[C]omputer-aided research, like any other form of legal research, is a component of attorneys' fees and cannot be independently taxed as an item of cost in addition to the attorneys' fee award.").  Kloeber observes that BP Group appears to charge for both its attorneys' time conducting online research as well as the cost of the online research itself.

However, the Eighth Circuit recently upheld a district court's award of such costs in a case in which the fees were sought pursuant to a negotiated settlement agreement, distinguishing *Leftwich* and *Standley* on the ground that they addressed the reimbursement of costs under fee-shifting statutes. *See In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F.3d 913, 918 (8th Cir. 2011); *see also Trs. of Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253,1258 (9th Cir. 2006) ("No other circuit has endorsed [the Eighth Circuit's] view [as expressed in *Leftwich* and *Standley*], and many have expressly held that computerized research costs can, in appropriate circumstances, be recovered in addition to the hourly rates of attorneys." (citations omitted)); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1068 n.4 (D. Minn. 2010) ("[I]t is unclear whether *Standley* and *Leftwich* represent a hard-and-fast rule in the Eighth Circuit."). In the Court's view, the parties' pre-conflict contractual agreement to award reasonable attorney fees and costs to the prevailing party in any dispute under the agreement more closely resembles a settlement agreement than a fee-shifting statute; under the reasoning of *In re UnitedHealth Group Inc.*, *Leftwich* and *Standley* are not controlling precedent with regard to the excludability of online research costs from an award of reasonable attorney fees and costs.

The Aircraft Management Agreement, however, provides only for those costs that are reasonably incurred, and the Court may reduce an award on the basis of inadequate documentation. *See Hensley*, 461 U.S. at 433. Many, and perhaps most, of BP Group's submitted charges for online research contain vague descriptions such as "computer research" or "document retrieval." The Court cannot determine the relevance or

necessity of such charges, let alone their possible relation to this dispute, from such ambiguous descriptions. *See Felder ex rel. Felder v. King*, No. 07–4929, 2011 WL 2174538, at *4 (D. Minn. May 31, 2011) (reducing an award of costs where "the bare receipts [for photocopies] . . . gave no basis to determine which, if any, of these photocopies were necessarily obtained for use in the case" (internal quotation marks omitted)).  Accordingly, the Court finds it appropriate to reduce by 60% BP Group's request for reimbursement of online research fees, from $24,487.20 to $9,794.88. Another basis for the Court's reduction is BP Group's failure to provide adequate supporting documentation for additional charges for costs such as "held hard costs" and unidentified costs ($8,662.94 by Kloeber's count).  Most of these costs are likely appropriate and attributable to deposition transcripts and travel expenses, but the Court is unable to readily account for them based on the evidence submitted.  The Court therefore concludes that $25,124.41 is an appropriate award for reasonable fees incurred as a result of this dispute.

## II.    INTEREST

The Aircraft Management Agreement provides that any payments "due to either party under this Agreement, if not paid on or before the due date, shall bear interest at the lesser of 12% per annum, or the maximum rate allowed by law."  (Scott Aff., Ex. A at 9, ¶ 24.)  In the Summary Judgment Order, the Court directed that judgment shall be entered in favor of BP Group and against Kloeber in the amount of $1,518,221.67, encompassing (1) BP Group's payment to West Star Aviation ($647,887.03), (2) monthly payments due

under the Aircraft Management Agreement less charter revenue earned from alternate sources and BP Group's use of the Aircraft ($860,632.01), and (3) the costs of returning the Aircraft to Florida ($9,702.63). *BP Group, Inc.*, 2011 WL 884135 at *12. The Court also directed Kloeber to pay interest on these amounts listed at the rate of 12% per annum commencing the day after each amount was due. *Id.* BP Group has moved the Court to assess interest in the amount of 12% per annum on these three amounts.

Kloeber challenges only the assessment of interest relating to the West Star payment, on two grounds. First, he argues that since the West Star bill was owed **to West Star** by CWA, the provision of the Aircraft Management Agreement requiring 12% annual interest on payments "due to either party under this Agreement" does not apply. However, under the Aircraft Management Agreement it was the obligation of CWA or its assignee to pay for paint and interior refurbishment work performed by West Star, and Kloeber guaranteed the performance of CWA or its assignee. When CWA or its assignee, and subsequently Kloeber as guarantor, failed to pay the West Star bill as mandated by the Aircraft Management Agreement, BP Group was compelled to do so and then sue for breach of contract. The West Star bill is therefore a financial obligation owed by Kloeber to BP Group under the terms of the Aircraft Management Agreement and guaranty. The agreement's provision mandating 12% interest per annum applies to the West Star bill.

Kloeber also argues that BP Group is entitled to interest on the West Star bill beginning May 1, 2009, the date BP Group paid the bill, rather than BP Group's requested date of January 1, 2009, the day after West Star's work was completed and the

aircraft became available.  The Court agrees.   The West Star bill could not have been owed **to BP Group** by Kloeber under the Aircraft Management Agreement until BP Group actually paid the bill.  Rather, from the time the aircraft was ready until the time BP Group paid the bill, the bill was owed **to West Star** by CWA or its assignee, and/or their guarantors.  Because the Aircraft Management Agreement provides for interest only if owed sums are not paid "on or before the due date[,]" the Court concludes that interest on the West Star bill must be applied from **May 2, 2009**, the day after BP Group paid the bill, through March 14, 2011, the date judgment was entered.  *See id.* ("Kloeber shall also pay interest on the amounts listed in paragraph 4 at the rate of 12% per annum commencing **the day after** each amount was due." (emphasis added)).  Likewise, while not a reduction requested by Kloeber, the Court concludes that interest on the cost of returning the plane to Florida, following BP Group's payment of the West Star bill, applies from May 2, 2009 through March 14, 2011.

The period between May 2, 2009 and March 14, 2011 constitutes 681 days, or 1.866 years.  Applying a 12% per annum rate of interest, Kloeber owes BP Group $145,074.86 on the West Star bill ($647,887.03), and $2,172.61 on the cost of transporting the aircraft ($9,702.63).  Adding these quantities to the unchallenged amount of interest on the unpaid monthly payments, $161,441.49, BP Group is entitled to a total amount of interest of $308,688.96.

## ORDER

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     BP Group's Motion to Add Attorney Fees and Costs to Judgment Without Hearing [Docket No. 87] is **GRANTED in part** and **DENIED in part**.  BP Group is awarded attorney fees in the amount of $200,692.65 and costs in the amount of $25,124.41.

2.     BP Group's Motion to Add Interest to Judgment Without Hearing [Docket No. 90] is **GRANTED in part** and **DENIED in part**.  BP Group is awarded pre-judgment interest in the amount of $308,688.96.


DATED:   September 21, 2011                          s/ John R. Tunheim
at Minneapolis, Minnesota.
                                                           JOHN R. TUNHEIM
                                                       United States District Judge